IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:95-CR-41-D

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v.     )<br>)<br>BERNARD CELESTINE,   )<br>)<br>Defendant.   ) | **ORDER** |

On March 28, 2022, Bernard Celestine ("Celestine" or "defendant") moved for compassionate release and a sentence reduction under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) and filed exhibits in support [D.E. 1174]. On May 2, 2022, the government responded in opposition [D.E. 1193]. On May 17, 2022, the probation office filed a modification to the Presentence Investigation Report ("PSR") stating that the new statutory maximum on count three is 240 months' imprisonment [D.E. 1205]. As explained below, the court grants Celestine's motion for a sentence reduction in part and reduces his sentence on count three to 240 months' imprisonment, but denies any other reduction of Celestine's sentence in light of the section 3553(a) factors. Celestine shall continue to serve his life sentence.

I.

On November 12, 1996, a jury found Celestine guilty of racketeering in violation of 18 U.S.C. § 1962(c) (count one), conspiracy to violate the RICO statute in violation of 18 U.S.C. § 1962(d) (count two), conspiracy to distribute and possess with the intent to distribute cocaine and cocaine base in violation of 21 U.S.C. § 846 (count three), conspiracy to kidnap in violation of 18

U.S.C. § 1201(c) (count ten), and kidnapping resulting in death and aiding and abetting in violation of 18 U.S.C. §§ 1201(a)(1) and (2) (count eleven). See [D.E. 525]. Celestine and his associates operated a large-scale drug enterprise in New York and North Carolina. See PSR [D.E. 928] ¶¶ 11–26. As part of Celestine's drug trafficking, Celestine was responsible for distributing at least 3.5 kilograms of cocaine base. See id. at ¶ 45. And Celestine was involved in the kidnaping and brutal murder of cooperating witness, Roneka Jackson. See id. at ¶¶ 38–44. Celestine and a co-conspirator assaulted Jackson until she was unconscious and then murdered her by setting set her body on fire with gasoline and matches. See id. at ¶ 42. Before Celestine and others murdered Jackson, Jackson had assisted law enforcement in investigating Celestine and his criminal associates. See id.

On March 11, 1997, the court held Celestine's sentencing hearing. The court calculated Celestine's offense level to be 43, his criminal history category to be I, and his guideline range on each count to be life imprisonment. See PSR ¶¶ 70–79, 80, 84. Count eleven carried a mandatory life sentence. See 18 U.S.C. § 1201(c); PSR ¶ 83. After considering the arguments of counsel, the court sentenced Celestine to life imprisonment on each count to run concurrently. See [D.E. 546].

Celestine appealed. See [D.E. 555]. The Fourth Circuit affirmed. See United States v. Celestine, 43 F. App'x 586, 589, 598 (4th Cir. 2002) (per curiam) (unpublished); [D.E. 662]. Celestine petitioned for writ of certiorari. On December 16, 2002, the Supreme Court denied certiorari. See Celestine v. United States, 123 S. Ct. 706 (2002).

On January 12, 2004, Celestine moved to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. See [D.E. 689]. The court dismissed Celestine's section 2255 motion. See [D.E. 725]. On appeal, the Fourth Circuit denied a certificate of appealability and dismissed the appeal. See United States v. Celestine, 158 F. App'x 493 (4th Cir. 2005) (per curiam) (unpublished); [D.E. 398].

2

On April 4, 2014, Celestine again moved to vacate his sentence pursuant to 28 U.S.C. § 2255. See [D.E. 803]. On April 8, 2014, the court dismissed Celestine's motion. See [D.E. 805]. On November 25, 2014, the Fourth Circuit denied a certificate of appealability and dismissed the appeal. See United States v. Celestine, 585 F. App'x 271 (4th Cir. 2014) (per curiam) (unpublished); [D.E. 821]. On May 8, 2015, Celestine moved to reduce his sentence under U.S.S.G. Amendment 782. See [D.E. 834]. On January 20, 2016, the court denied the motion. See [D.E. 879]. On February 25, 2016, Celestine moved to correct the judgment and the PSR under Rule 36 of the Federal Rules of Criminal Procedure. See [D.E. 881]. On January 25, 2017, the court denied this motion. See [D.E. 922]. Celestine appealed. See [D.E. 925]. On June 23, 2017, the Fourth Circuit affirmed this court's order denying Celestine's motion. See United States v. Celestine, 692 F. App'x 137 (4th Cir. 2017) (per curiam) (unpublished); [D.E. 939].

On February 4, 2019, Celestine moved for a sentence reduction under the First Step Act. See [D.E. 996]. On June 21, 2021, the case was reassigned. On March 9, 2022, the court ordered the government to respond to Celestine's motion. See [D.E. 1169]. On March 28, 2022, Celestine moved for compassionate release and a sentence reduction under the First Step Act and filed exhibits in support. See [D.E. 1174]. On May 2, 2022, the government responded in opposition. See [D.E. 1193]. On May 17, 2022, the probation office filed a modification to the PSR. See [D.E. 1205].

II.

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under 18 U.S.C. § 3582(c)(1)(A), a court may reduce a defendant's term of imprisonment if (1) "extraordinary and compelling reasons warrant such a reduction" or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison,"

3

and the BOP has determined that the defendant is not a danger to another person or the community. 18 U.S.C. § 3582(c)(1)(A); see United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022); United States v. High, 997 F.3d 181, 185–86 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 329–30 (4th Cir. 2021) (per curiam), cert. denied, 142 S. Ct. 383 (2021); United States v. McCoy, 981 F.3d 271, 275–77 (4th Cir. 2020). A section 3582(c)(1)(A) sentence reduction must comport with the 18 U.S.C. § 3553(a) factors and applicable Sentencing Commission policy statements. See 18 U.S.C. § 3582(c)(1)(A); Hargrove, 30 F.4th at 194.

Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), a defendant must "fully exhaust[] all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). This requirement is nonjurisdictional, and the government waives a defense based on section 3582(c)(1)(A)'s timing requirements if the government does not timely raise it. See United States v. Muhammad, 16 F.4th 126, 129–30 (4th Cir. 2021).

When considering a defendant's compassionate release motion, the court determines whether extraordinary and compelling circumstances exist and whether, in the court's discretion, those circumstances warrant relief in light of relevant factors in 18 U.S.C. § 3553(a) and applicable Sentencing Commission policy statements. See Hargrove, 30 F.4th at 194–95; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–32. In evaluating the section 3553(a) factors, the court considers, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, a defendant's post-sentencing conduct, the need to deter criminal behavior, the need to promote respect for the law, and the need to protect the public. See 18 U.S.C. § 3553(a); Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Pepper v. United States, 562 U.S. 476, 480–81

4

(2011); High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Although a court considers a defendant's post-sentencing conduct, rehabilitation alone is not an extraordinary and compelling reason for a sentence reduction. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13 cmt. n.3; McCoy, 981 F.3d at 286 n.9.

No Sentencing Commission policy statement currently applies to a defendant's compassionate release motion. See Hargrove, 30 F.4th at 194; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–31; McCoy, 981 F.3d at 281–82. U.S.S.G. § 1B1.13 is a policy statement that applies to compassionate release motions filed by the BOP Director. Nonetheless, section 1B1.13 "remains helpful guidance even when motions are filed by defendants." McCoy, 981 F.3d at 282 n.7; see Hargrove, 30 F.4th at 194. Application Note 1 of U.S.S.G. § 1B1.13 lists several extraordinary and compelling circumstances, including (A) a defendant's serious medical condition, (B) a defendant's age, when coupled with serious physical or mental deterioration due to age and having served 10 years or 75 percent of his or her sentence, (C) certain family circumstances in which a defendant's minor children or incapacitated spouse or registered partner would otherwise have no caregiver, or (D) any other extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1. "[A]n extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a" sentence reduction. Id. at § 1B1.13 cmt. n.2.

Celestine seeks compassionate release pursuant to section 3582(c)(1)(A). Celestine sought administrative relief before filing his motion for compassionate relief. See [D.E. 1174-4] 4. Therefore, Celestine has satisfied the administrative exhaustion requirement, which the government recognizes. See [D.E. 1193] 3–4.

5

In seeking compassionate release, Celestine cites the COVID-19 pandemic and his hypertension, degenerative disc disorder, long-term, debilitating effects from a botched surgery, and other conditions related to his botched surgery. The "medical condition of the defendant" policy statement requires that the defendant be "suffering from a serious physical or medical condition ... that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Celestine notes that the Centers for Disease Control and Prevention lists "high blood pressure/hypertension" as a medical condition that may place a person at heightened risk of serious infection from COVID-19. [D.E. 1174] 6. However, Celestine does not argue that the BOP is failing to treat his medical conditions. See generally id. And Celestine is fully vaccinated against COVID-19, thereby reducing his risk of serious infection from COVID-19. See [D.E. 1193-1]; cf. United States v. Scalea, No. 21-2631, 2022 WL 795425, at *1 (3d Cir. Mar. 15, 2022); United States v. Ibarra, No. 21-10255, 2022 WL 229198, at *1 (9th Cir. Jan. 25, 2022) (unpublished); United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021); United States v. Hald, 8 F.4th 932, 936 n.2 (10th Cir. 2021), cert. denied, 142 S. Ct. 2742 (2022); United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); United States v. Baeza-Vargas, 532 F. Supp. 3d 840, 843–46 (D. Ariz. 2021). Accordingly, reducing Celestine's sentence is inconsistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic and Celestine's hypertension, degenerative disc disorder, long-term, debilitating effects from a botched surgery, and other conditions related to his botched surgery are

6

extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). At the same time, Celestine's vaccinated status diminishes the weight of that assumption. Cf. Broadfield, 5 F.4th at 803. Regardless, the section 3553(a) factors counsel against granting compassionate release. See High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020).

In deciding whether to grant compassionate release, the court finds that Celestine engaged in horrific criminal behavior. See PSR ¶¶ 24–29, 39–45. As discussed, Celestine committed abhorrent violent acts with his drug trafficking associates, including murder. See id. at ¶¶ 38–44. Nonetheless, Celestine has participated in courses during his time in prison, developed credible rapport with prison staff, lowered his risk of recidivism due to his age, and volunteered regularly to help elderly inmates with chores and tasks. See [D.E. 1174-3, 1174-4, 1174-5]. Furthermore, these five federal convictions are Celestine's only convictions. See PSR ¶¶ 48–51; [D.E. 1174] 9; cf. Pepper, 562 U.S. at 491–92; High, 997 F.3d at 187–91; McDonald, 986 F.3d at 412; United States v. Chambers, 956 F.3d 667, 671–75 (4th Cir. 2020); Martin, 916 F.3d at 398.

The court must balance Celestine's positive steps while incarcerated with his horrific criminal conduct and the other section 3553(a) factors. Having considered the entire record, the parties' arguments, the section 3553(a) factors, and the need to punish Celestine for his serious criminal behavior, to incapacitate Celestine, to promote respect for the law, to deter others, to protect society, and to impose just punishment, the court denies Celestine's motion for compassionate release. See, e.g., Concepcion v. United States, 142 S. Ct. 2389, 2403–04 (2022); Chavez-Meza,

7

138 S. Ct. at 1966–68; Pepper, 562 U.S. at 480–81; Hargrove, 30 F.4th at 198–200; Kibble, 992 F.3d at 331–32; High, 997 F.3d at 187–91; McDonald, 986 F.3d at 412; United States v. Ruffin, 978 F.3d 1000, 1008–09 (6th Cir. 2020); Chambliss, 948 F.3d at 693–94; Martin, 916 F.3d at 398; United States v. Hill, No. 4:13-CR-28, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

### III.

On August 3, 2010, Congress enacted the Fair Sentencing Act of 2010 ("Fair Sentencing Act"), Pub. L. No. 111-220, 124 Stat. 2372 (codified as amended at 21 U.S.C. §§ 801, et seq.). Section 2 of the Fair Sentencing Act reduced the statutory penalties for certain drug offenses by increasing the drug quantities necessary to trigger certain statutory minimums and maximums. For example, the amount of cocaine base ("crack") necessary to trigger a 5-to-40-year sentence increased from 5 grams to 28 grams. Likewise, the amount of cocaine base ("crack") necessary to trigger a 10-year-to-life sentence increased from 50 grams to 280 grams. See id. at § 2, 124 Stat. at 2372.

The First Step Act makes the Fair Sentencing Act's reductions in mandatory minimum sentences apply retroactively to defendants who committed their "covered offense" of conviction before August 3, 2010. See id. at § 404(a), 132 Stat. at 5222. Section 404(a) defines "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act . . ., that was committed before August 3, 2010." Id. "Here, 'statutory penalties' references the entire, integrated phrase 'a violation of a Federal criminal statute.'" Terry v. United States, 141 S. Ct. 1858, 1862 (2021) (quotation omitted). "And that phrase means 'offense.'" Id. (quotation omitted). "We thus ask whether the Fair Sentencing Act modified the statutory penalties for [the defendant's] offense." Id.

Under the First Step Act, "[a] court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." Id. at § 404(b), 132 Stat. at 5222. A court that modifies a sentence under the First Step Act does so under 18 U.S.C. § 3582(c)(1)(B), which allows a court to "modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); see Terry, 141 S. Ct. at 1862–63; United States v. Thomas, 32 F.4th 420, 423–26 (4th Cir. 2022); United States v. Lancaster, 997 F.3d 171, 174–76 (4th Cir. 2021); United States v. Collington, 995 F.3d 347, 352–53 (4th Cir. 2021); Chambers, 956 F.3d at 671–72; United States v. Wirsing, 943 F.3d 175, 183 (4th Cir. 2019); United States v. Alexander, 951 F.3d 706, 708 (6th Cir. 2019).

If a defendant qualifies, courts may consider a motion for a reduced sentence only if the defendant did not previously receive a sentence or sentence reduction in accordance with the Fair Sentencing Act and did not have a motion under the First Step Act denied "after a complete review of the motion on the merits." First Step Act, § 404(c), 132 Stat. at 5222. Under the First Step Act, the district court adjusts the sentencing guideline calculations "as if the Fair Sentencing Act's amendments had been in place at the time of the offense." Concepcion, 142 at 2402 n.6; see United States v. Curry, 792 F. App'x 267, 268 (4th Cir. 2020) (per curiam) (unpublished); Chambers, 956 F.3d at 671–72. Moreover, a court must reduce a sentence to account for a new statutory maximum. See Collington, 995 F.3d at 358. Besides accounting for a lower statutory maximum, however, the First Step Act grants to district courts "particular" and "broad discretion." Concepcion, 142 S. Ct. at 2404. And the plain language of section 404(c) expressly defines that discretion: "Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section." First Step Act, § 404(c), 132 Stat. at 5222; see, e.g., Concepcion, 142 S. Ct. at 2402–04; United States v.

9

Gravatt, 953 F.3d 258, 261 (4th Cir. 2020); Wirsing, 943 F.3d at 184–86. As the Supreme Court recently noted in Concepcion, section 404(c) "clarif[ies] that the Act does not 'require a court to reduce any sentence,'" and accordingly, "appellate review should not be overly searching." Concepcion, 142 S. Ct. at 2404. The First Step Act "leaves much to the judge's own professional judgment" and simply requires the "court to demonstrate that it has considered the arguments before it." Id. at 2404–05 (cleaned up); see Chavez-Meza, 138 S. Ct. at 1966.

Celestine argues that his cocaine-related offense (conspiracy to distribute and possess with the intent to distribute cocaine and cocaine base in violation of 21 U.S.C. § 846 (count three)) and RICO offenses (racketeering in violation of 18 U.S.C. § 1962(c) (count one) and conspiracy to violate the RICO statute in violation of 18 U.S.C. § 1962(d) (count two)) are covered offenses under the First Step Act. See [D.E. 1174] 3.

A.

Celestine's conviction for conspiracy to distribute and possess with the intent to distribute cocaine and cocaine base in violation of 21 U.S.C. § 846 (count three) is a covered offense under the Fair Sentencing Act. The court has discretion under U.S.S.G. Amendment 782 and 18 U.S.C. § 3582(c)(2) to reduce Celestine's sentence. See, e.g., Chavez-Meza, 138 S. Ct. at 1963–68; Dillon v. United States, 560 U.S. 817, 827 (2010); Martin, 916 F.3d at 395–98; United States v. Peters, 843 F.3d 572, 574 (4th Cir. 2016); United States v. Patterson, 671 F. App'x 105, 105–06 (4th Cir. 2016) (per curiam) (unpublished); United States v. Cole, 618 F. App'x 178, 178–79 (4th Cir. 2015) (per curiam) (unpublished); United States v. Thomas, 546 F. App'x 225, 225–26 (4th Cir. 2013) (per curiam) (unpublished); United States v. Perez, 536 F. App'x 321, 321 (4th Cir. 2013) (per curiam) (unpublished); United States v. Smalls, 720 F.3d 193, 195–97 (4th Cir. 2013); United States v.

Mann, 709 F.3d 301, 306–07 (4th Cir. 2013); United States v. Stewart, 595 F.3d 197, 200 (4th Cir. 2010).

In deciding whether to reduce Celestine's sentence on count three, the court finds that Celestine engaged in serious criminal behavior involving drug trafficking. See PSR ¶¶ 24–29, 45. Moreover, Celestine committed abhorrent violent acts with his drug trafficking associates in connection with drug trafficking activity. See id. at ¶¶ 38–44. Nonetheless, Celestine has participated in courses during his time in prison, developed credible rapport with prison staff, lowered his risk of recidivism due to his age, and volunteered regularly to help elderly inmates with chores and tasks. See [D.E. 1174-3, 1174-4, 1174-5]. Furthermore, under Collington, the new statutory maximum on count three is now 20 years' imprisonment. See [D.E. 1205] 1–2; Collington, 995 F.3d at 356–60.

Having reviewed the entire record and all relevant policy statements, the court grants Celestine's motion for reduction of sentence as to count three and reduces his sentence on count three to 20 years' imprisonment. See, e.g., Chavez-Meza, 138 S. Ct. at 1963–68; Collington, 995 F.3d at 356–60; Martin, 916 F.3d at 395–98.

B.

Celestine also argues that his RICO convictions in count one and count two are each a "covered offense" because one of the racketeering predicates undergirding those convictions was conspiracy to distribute and possess with the intent to distribute cocaine and cocaine base in count three. See [D.E. 1174] 3–4. In count one, the government charged Celestine with violating 18 U.S.C. § 1962(c). See [D.E. 309] ¶¶ 13–15, 26–29. In count two, the government charged Celestine with violating 18 U.S.C. § 1962(d). See id. at ¶ 31. Section 1962(c) states: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which

11

affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). And section 1962(d) states: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). "The elements of a substantive RICO offense under [section] 1962(c) are (1) the conduct (2) of an enterprise (3) through a pattern of 'racketeering activity.'" United States v. Mouzone, 687 F.3d 207, 217 (4th Cir. 2012) (quotation omitted); see Salinas v. United States, 522 U.S. 52, 62 (1997). "A 'pattern of racketeering activity' requires at least two acts of 'racketeering activity.'" Mouzone, 687 F.3d at 217; see 18 U.S.C. § 1961(5); Salinas, 522 U.S. at 62. And 18 U.S.C. § 1961(1) defines which conduct qualifies as "racketeering activity." Numerous predicate acts of racketeering activity supported Celestine's RICO convictions, including conspiracy to kidnap, kidnapping resulting in death and aiding and abetting, and conspiracy to distribute and possess with the intent to distribute cocaine and crack cocaine. See PSR ¶¶ 24, 26, 39–45, 70–79; see also [D.E. 309] ¶¶ 13–15, 26–29.

Under the RICO statute, defendants typically face a 20-year statutory maximum penalty. See 18 U.S.C. § 1963(a). However, if the underlying racketeering activity involves an offense "for which the maximum penalty includes life imprisonment," then the statutory maximum for the RICO offense is life imprisonment. Id. The Fair Sentencing Act did not alter those statutory penalties. See Terry, 141 S. Ct. at 1863–64; United States v. Allen, No. 3:03cr394, 2022 WL 2124495, at *5–9 (E.D. Va. June 13, 2022) (unpublished), appeal docketed, No. 22-6746 (4th Cir. June 30, 2022).

In United States v. Thomas, the Fourth Circuit considered whether a continuing criminal enterprise ("CCE") conviction under 18 U.S.C. §§ 848(a) and (c) was a covered offense under the First Step Act. See Thomas, 32 F.4th at 426–29. In Thomas, the defendant argued that his CCE conviction was a covered offense because it was predicated, in part, on distributing crack cocaine.

12

See id. at 427. Relying on the Supreme Court's recent decision in Terry, the Fourth Circuit rejected the defendant's argument, explaining that "though Thomas's conviction for sections 848(a) and (c) required a finding that he committed a continuing series of drug violations, the quantity and drug type of these violations made no difference for sentencing purposes." Id. at 427–28. Sections 848(a) and (c) provide a statutory penalty range of 20 years to life imprisonment. See 18 U.S.C. §§ 848(a), (c). However, a section 848(b) conviction carries a mandatory life sentence if, inter alia, a defendant meets a certain drug weight threshold. See Thomas, 32 F.4th at 426–27. The Fourth Circuit concluded in Thomas that the defendant was sentenced under section 848(a) and (c) and was not eligible for resentencing under the First Step Act. See id. at 429.

Although the court sentenced Celestine under the higher statutory penalties in 18 U.S.C. § 1963(a), the type and weight of the drugs for which Celestine was responsible made no difference at sentencing on count one or count two in light of Celestine's conspiracy to kidnap and kidnapping resulting in death predicates, which alone sufficed to sustain Celestine's RICO convictions and trigger the higher statutory maximums on count one and count two. Assuming without deciding that the Fair Sentencing Act "did modify the penalties for" Celestine's predicate violation of conspiracy to distribute and possess with the intent to distribute cocaine and crack cocaine, his "statutory penalty range [on count one and count two] . . . remained the same before and after the [Fair Sentencing Act]." Id. at 427; see Terry, 141 S. Ct. at 1862.[1] Although the Fair Sentencing Act's changes to the

---

[1] Because Celestine was convicted and sentenced before the Supreme Court decided Apprendi v. New Jersey, 530 U.S. 466 (2000), the government did not charge a drug weight in the indictment and never had to prove a drug weight beyond a reasonable doubt. See [D.E. 210] ¶ 15; see also Celestine, 43 F. App'x at 598 (holding that Apprendi errors in the case of Celestine and Celestine's co-defendants did not affect their substantial rights in light of their life sentences on other counts). At sentencing, the court conservatively held Celestine accountable for distributing 3.5 kilograms of cocaine base. See id. at ¶ 45. As discussed, under Collington, the current applicable

statutory penalties in 21 U.S.C. § 841 could theoretically affect whether a defendant faces a statutory maximum sentence of 20 years or life under 18 U.S.C. § 1962(c), such as a case in which the Fair Sentencing Act's changes mean that none of a defendant's RICO predicates now carry a maximum sentence of life imprisonment, that is not the case here. Moreover, as discussed, the Fair Sentencing Act did not modify Celestine's statutory penalties under 18 U.S.C. §§ 1962(c) or (d). See Terry, 141 S. Ct. at 1863–64.

In United States v. Gravatt, the Fourth Circuit held that a defendant's drug conspiracy conviction under 21 U.S.C. § 846 was a covered offense even though the conspiracy charged both powder and crack cocaine and the Fair Sentencing Act's changes to the statutory penalties did not affect the defendant's statutory penalty range because of the quantity of powder cocaine for which the defendant was responsible. See 953 F.3d at 262–64. The defendant's offense was covered under the First Step Act because the defendant was convicted of an offense involving crack cocaine, and the Fair Sentencing Act modified the triggering quantities for the statutory penalties for crack cocaine offenses in 21 U.S.C. § 841(b)(1)(B). See id.

This case is arguably similar because Celestine was convicted of an offense under 18 U.S.C. §§ 1962(c) and (d) supported, in part, by a drug conspiracy involving both crack and powder cocaine, and Celestine's statutory penalty range remained the same even though the statutory penalty range for the underlying drug conspiracy is now lower under the Fair Sentencing Act. But Gravatt was premised on the Fourth Circuit's holding in Wirsing that "[a]ll defendants who are serving sentences for violations of 21 U.S.C. §§ 841(b)(1)(A)(iii) and (B)(iii), and who are not excluded pursuant to the expressed limitations in section 404(c) of the First Step Act, are eligible for relief under that

---

statutory maximum for Celestine's drug conspiracy is now 20 years. See 21 U.S.C. § 841(b)(1)(C); Collington, 995 F.3d at 356–60.

14

Act." Gravatt, 953 F.3d at 264 (quotation omitted) (alteration in original); see Thomas, 32 F.4th at 424, 427; Allen, 2022 WL 2124495, at *9; cf. Terry, 141 S. Ct. at 1862. Thus, despite any arguable similarities, Celestine's case is different than Gravatt because Celestine is not serving a sentence for violating 21 U.S.C. § 846 based on an object of the conspiracy under 21 U.S.C. §§ 841(b)(1)(A)(iii) or (B)(iii). Rather, he is serving a life sentence on count one and count two for violating 18 U.S.C. §§ 1962(c) and (d) based on a pattern of racketeering activity as defined in 18 U.S.C. §§ 1961(1) and (5), including conspiracy to kidnap and kidnapping resulting in death. Section 1963(a) defines the penalties for Celestine's RICO offenses, and, as discussed, Terry and Thomas teach that the Fair Sentencing Act did not alter those penalties. Accordingly, Celestine's RICO convictions in count one and count two are not covered offenses under Terry and Thomas.

Alternatively, even if Celestine's RICO convictions in count one and count two are covered offenses under Gravatt or some other rationale, the court would still deny Celestine's motion on the merits due to the section 3553(a) factors. Even assuming Celestine's racketeering convictions are covered offenses, Celestine's offense level remains 43 and his advisory guideline range on count one and count two is life imprisonment. See [D.E. 1069] 2. Because of the conspiracy to kidnap and kidnapping resulting in death predicates, Celestine's statutory maximum on count one and count two remains life imprisonment. See 18 U.S.C. § 1963(a); 18 USC §§ 1201(a)(1), (2).

The court has completely reviewed the entire record, Celestine's arguments, the advisory guideline range, and all relevant factors under 18 U.S.C. § 3553(a). See Chavez-Meza, 138 S. Ct. at 1966–68; Collington, 995 F.3d at 356–60; Chambers, 956 F.3d at 671–75; United States v. May, 783 F. App'x 309, 310 (4th Cir. 2019) (per curiam) (unpublished). In deciding whether to reduce Celestine's sentence on count one and count two, the court finds that Celestine engaged in serious criminal behavior involving drug trafficking. See PSR ¶¶ 24–29, 45. Moreover, Celestine

15

committed abhorrent violent acts with his drug trafficking associates in connection with drug trafficking, including conspiracy to kidnap and kidnapping resulting in death. See id. at ¶¶ 38–44. Nonetheless, Celestine has participated in courses during his time in prison, developed credible rapport with prison staff, lowered his risk of recidivism due to his age, and volunteered regularly to help elderly inmates with chores and tasks. See [D.E. 1174-3, 1174-4, 1174-5]. Furthermore, these convictions are Celestine's first and only convictions. See PSR ¶¶ 48–51; [D.E. 1174] 9; cf. Pepper, 562 U.S. at 491–92; High, 997 F.3d at 187–91; Chambers, 956 F.3d at 671–75; McDonald, 986 F.3d at 412; Martin, 916 F.3d at 398.

The court must balance Celestine's positive steps while incarcerated with his horrific criminal conduct and the other section 3553(a) factors. In light of the need to punish Celestine for his serious criminal behavior, to incapacitate Celestine, to promote respect for the law, to deter others, to protect society, and to impose just punishment, the court declines to reduce Celestine's sentence on count one and count two. See 18 U.S.C. § 3553(a); see, e.g., Concepcion, 142 S. Ct. at 2404; Chavez-Meza, 138 S. Ct. at 1966–68; Collington, 995 F.3d at 356–60; Chambers, 956 F.3d at 671–75; May, 783 F. App'x at 310.

In reaching this decision, the court has considered the entire record, the parties' arguments, and the section 3553(a) factors. However, even if the court miscalculated the new advisory guideline range, it would not reduce Celestine's sentence on count one or count two in light of the entire record and the section 3553(a) factors. See 18 U.S.C. § 3553(a); Concepcion, 142 S. Ct. at 2404; United States v. Gomez-Jimenez, 750 F.3d 370, 382–86 (4th Cir. 2014).

IV.

In sum, the court GRANTS IN PART defendant's motion for reduction of sentence [D.E. 996], REDUCES defendant's sentence on count three to 240 months' imprisonment, and DENIES

16

all other requests in defendant's motions [D.E. 996, 1174]. All other aspects of the judgment remain the same.

SO ORDERED. This 31 day of August, 2022.

JAMES C. DEVER III
United States District Judge

17

Case 4:95-cr-00041-D   Document 1232   Filed 08/31/22   Page 17 of 17